UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GUSSIE BELLE TARRANT,                )
                                     )
    Plaintiff,                       )
                                     )
                                     )   Case No. 3:10-cv-1204
                                     )   Judge Trauger
v.                                   )
                                     )
NORTHLAND GROUP, INC.,               )
                                     )
    Defendant.                       )

## MEMORANDUM

Pending before the court is the defendant's Motion for Summary Judgment (Docket No. 15), to which the plaintiff has responded (Docket No. 17), and the defendant has filed a reply (Docket No. 18). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND

The plaintiff, Gussie Belle Tarrant ("Ms. Tarrant"), owes a debt to Department Stores National Bank ("DSNB") in connection with a Macy's charge account.[1] DSNB eventually placed that debt with the defendant, Northland Group, Inc. ("Northland"), for collection on approximately September 8, 2009.[2] Northland subsequently sent a letter to the plaintiff notifying

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statement of undisputed facts (Docket No. 15, Ex. 2), the plaintiff's responses thereto (Docket No. 17, Ex. 3), the defendant's reply (Docket No. 18, Ex. 1), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

[2] The plaintiff neither admits nor disputes this statement of fact, but instead simply states that she "is without sufficient knowledge to admit or deny this allegation." (*See* Docket No. 17,

1

her of the debt and advising her of her rights under the Fair Debt Collection Practices Act ("FDCPA") to dispute the debt. In addition, it made repeated attempts to reach Ms. Tarrant telephonically over the course of approximately the next four months, succeeding twice. This case arises from those actions.

After receiving the debt from DSNB, Northland sent a letter to Ms. Tarrant informing her of the debt and her right to dispute its validity on September 9, 2009.[3] This letter was one of two

---

Ex. 3 ¶ 5.) She responds to other paragraphs of the defendant's statement of facts in the same fashion. (*See id.* ¶¶ 8, 11-13.) The plaintiff's response is improper under both the Local Rules and Federal Rule of Civil Procedure 56.

For instance, Local Rule 56.01(c) expressly provides that any party opposing a summary judgment motion "must respond to each fact set forth by the movant by *either*: (i) agreeing that the fact is undisputed; (ii) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (iii) demonstrating that the fact is disputed." M.D. Tenn. R. 56.01(c) (emphasis added). Federal Rule of Civil Procedure 56 similarly precludes a response like the plaintiff's, absent an affidavit or declaration from the non-movant explaining why it cannot present "facts essential to justify its opposition." *See* Fed. R. Civ. P. 56(c)-(d). Accordingly, the court will consider the facts in paragraphs 5, 8, and 11-13 of the defendant's statement of facts to be undisputed for the purposes of this motion. *See* M.D. Tenn. R. 56.01(g) ("Failure to respond to a moving party's statement of material facts ... within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."); Fed. R. Civ. P. 56(e) (providing that court may consider fact undisputed for purposes of summary judgment motion where party "fails to properly address another party's assertion of fact as required by Rule 56(c)").

[3] While the plaintiff denies that Northland sent her a letter, the record evidence shows otherwise. Indeed, at her deposition, the plaintiff testified that she did not remember whether she received a letter from Northland notifying her of her right to dispute the debt under the FDCPA. (Docket No. 17, Ex. 2, Ex. A at 9-10, 29-30, 42.) In contrast, Northland submitted evidence demonstrating that it sent a letter to the plaintiff on September 9, 2009, disclosing her FDCPA rights. As per the affidavits of Greg Gruett, Northland's Executive Vice President of Operations, the company's account notes showed that a letter was sent to Ms. Tarrant on September 9, 2009. (Docket No. 15, Ex. 3 ¶¶ 1, 9; Docket No. 18, Ex. 2 ¶ 6.) Mr. Gruett stated that the account notes are created and kept in the ordinary course of business and are automatically generated each time a letter for a specific account is mailed or returned. (Docket No. 15, Ex. 3 ¶¶ 5, 9; Docket No. 18, Ex. 2 ¶¶ 4-5.) He added that he is personally familiar with Northland's practices and systems and fully understands "how to determine from [Northland's] regularly kept business

2

sent by Northland to Ms. Tarrant on that date.[4] It was sent to the plaintiff's home address in Old Hickory, Tennessee,[5] and it disclosed the amount of the debt ($373.22) and the name of the creditor to whom the debt was owed (DSNB/Macy's). The letter also contained the following disclosures:

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice[,] this office will provide you with the name and address of the original creditor, if different from the current creditor.

After it was sent, this letter was not returned to Northland by the United States Postal Service for being undeliverable.

---

records if a letter has been sent and/or returned." (Docket No. 18, Ex. 2 ¶¶ 1, 7.) Mr. Gruett similarly testified at his deposition that the account notes reflected that a letter was sent to the plaintiff on September 9, 2009, disclosing her FDCPA rights. (Docket No. 17, Ex. 2, Ex. B, at 28-30, 37.) Moreover, Don Plantenberg, the General Manager of Bridgz Marketing ("Bridgz"), Northland's vendor for printing and mailing letters, stated by affidavit that Bridgz printed the September 9, 2009 letter addressed to Ms. Tarrant disclosing her statutory rights and delivered it to the United States Postal Service on September 9, 2009. (Docket No. 18, Ex. 4 ¶¶ 1, 6.) Mr. Plantenberg added that the postal service did not report this letter as being undeliverable. (Docket No. 18, Ex. 4, ¶ 6.)

[4] The parties have neither attached the other September 9, 2009 letter to their summary judgment papers nor have they discussed its relevance to the issues presented in the instant motion.

[5] It is undisputed that the plaintiff resided at the same address at all times relevant to this lawsuit.

Northland also unsuccessfully attempted to contact Ms. Tarrant telephonically on September 9, 2009.[6] This was the first of 39 calls Northland made to the plaintiff's home phone number[7] over the span of approximately four months in connection with its debt collection efforts.[8] Of those 39 calls, Northland successfully conversed with the plaintiff on only two occasions. Northland's first successful telephonic communication with the plaintiff occurred on

---

[6] Paragraph 13 of Mr. Gruett's affidavit contained a log displaying all the calls made by Northland to the plaintiff during the entire collection period, which commenced on September 9, 2009. (Docket No. 15, Ex. 3 ¶ 13.) The information contained in the log was obtained from Northland's company records.

[7] It is undisputed that the plaintiff maintained the same home phone number at all times relevant to this lawsuit. At her deposition, the plaintiff testified that Northland had also called her cell phone. (Docket No. 17, Ex. 2, Ex. A at 6.) The plaintiff, however, has offered no other corroborating evidence supporting this statement. Indeed, she has failed to adduce any evidence concerning the circumstances surrounding the defendant's alleged calls to her cell phone. The defendant, on the other hand, cites Mr. Gruett's affidavits, which state that there was no indication in Northland's account notes that the company ever called Ms. Tarrant on her cell phone. (Docket No. 15, Ex. 3 ¶ 11; Docket No. 18, Ex. 2 ¶ 8.) His affidavits add that the account notes automatically record the date and time of each attempted telephone contact. (Docket No. 15, Ex. 3, ¶ 5; Docket No. 18, Ex. 2 ¶¶ 4, 8.) He also stated that a search of Northland's telephone bills and statements turned up no calls to the plaintiff's cell phone number during the collection period. (Docket No. 18, Ex. 2 ¶ 8.)

[8] Because Ms. Tarrant filed this action on December 20, 2010, Northland argues that, pursuant to the FDCPA's one-year statute of limitations, the relevant time period from which to analyze its calls to Ms. Tarrant commenced on December 20, 2009. *See* 15 U.S.C. § 1692k(d). Yet, the undisputed record evidence reveals a pattern of repeated calls made by the defendant over an approximately four-month period beginning in September of 2009 and continuing into the one-year limitations period. Because the plaintiff alleges that these repeated calls constituted actionable harassment under the FDCPA, her claim does not involve discrete acts, and thus "cannot be said to occur on any particular day." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). Accordingly, the continuing violation doctrine is applicable, and the entire course of the defendant's conduct will be analyzed in connection with the plaintiff's harassment claim. *See Joseph v. J.J. Mac Intyre Cos.*, 281 F.Supp.2d 1156, 1159-62 (N.D. Cal. 2003) (analogizing FDCPA claims alleging debtor harassment arising from series of repeated phone calls to Title VII hostile work environment claims and concluding that, because such claims do not involve discrete acts, the continuing violation doctrine is applicable).

4

October 29, 2009.  During that conversation, the plaintiff informed the defendant's representative that she did not have any money to pay off her debt, did not know when she would have any money to do so, and was currently unemployed.  The representative ended the conversation by stating that Northland would call her back.  The second conversation occurred over two months later, on January 13, 2010, wherein Ms. Tarrant informed a Northland representative that she continued to lack a job or any money to pay the debt and hung up.  After this conversation, Northland placed Ms. Tarrant's account on hold and made no further collection efforts before returning the account to DSNB on approximately March 8, 2010.

In those instances when it was unable to reach Ms. Tarrant, Northland never left a message on her answering machine.  It is undisputed that Northland did not say anything improper, threatening or abusive when it spoke to Ms. Tarrant, and there is no evidence that it otherwise attempted to deceive her.  Moreover, during the course of Northland's attempts to reach her telephonically, Ms. Tarrant never told the defendant not to call her.[9]

---

[9] When asked at her deposition if she ever told Northland not to contact her anymore, the plaintiff testified that she mailed a document to the company asking them not to contact her. (Docket No. 17, Ex. 2, Ex. A at 13.)  Yet, the plaintiff also testified that she had no idea when she sent this alleged document and added that she did not make any copies. (*Id*. at 13-14.)  The plaintiff also had trouble recalling precisely what it was that she sent, apart from the fact that it was a document she had obtained from Legal Aid that purportedly contained some codes indicating that the recipient is not to call anymore. (*Id.*)  Later, when she was asked for a second time if she ever told Northland not to call again, she stated "I don't know.  I had so many calls that I don't know  ... from different numbers, so I told a bunch of them not to call anymore." (*Id.* at 27.)

The only probative evidence in the record concerning this issue shows that Northland did not receive any correspondence from Ms. Tarrant.  In his affidavits, Mr. Gruett stated that Northland's account notes automatically note when correspondence is received concerning a specific account. (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶ 4.)  He added that the company's account notes showed that Northland received no correspondence in connection with Ms. Tarrant's account. (*Id.*)

At her deposition, the plaintiff testified that, aside from Northland, she received calls from other debt collectors. (Docket No. 17, Ex. 2, Ex. A at 27.) Indeed, the plaintiff had filed a separate lawsuit in this district involving another debt collector's alleged conduct during the same time period as the instant action. *See Tarrant v. Richard J. Boudreau & Assocs.*, No. 3:10-cv-1205 (M.D. Tenn., filed Dec. 20, 2010). The factual allegations in that suit were virtually identical to those underlying the present action.

The plaintiff commenced this suit on December 20, 2010, alleging violations of the FDCPA. In particular, Ms. Tarrant alleges that Northland violated the FDCPA by: (1) failing to send her written notification within five days of its initial communication with her disclosing the debt owed to DSNB and her right to dispute it; and (2) making repeated or continuous telephone calls with the intent to harass her. (Docket No. 1 ¶¶ 12, 16, 23.) These acts are alleged to violate 15 U.S.C. §§ 1692g(a), 1692d, 1692d(5), and 1692(f). Northland filed the pending motion on November 14, 2011.

## ANALYSIS

### I. Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the

evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The Defendant's Motion

The defendant has moved for summary judgment as to the plaintiff's claim under the FDCPA. This statute was enacted by Congress to eliminate "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Conduct that is alleged to violate the FDCPA is analyzed under the "least sophisticated consumer" standard, which is an objective test. *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009). This standard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999).

In the present motion, Northland specifically contends that it is entitled to summary judgment on the plaintiff's 15 U.S.C. § 1692g(a) claim alleging that it failed to send her written notice disclosing the debt she owed to DSNB and her right to dispute that debt.[10] It also argues

---

[10] The defendant also argues that the plaintiff's § 1692g(a) claim is time-barred under the FDCPA's one-year statute of limitations. However, the defendant raised this argument for the

7

that summary judgment is proper as to the plaintiff's claim that Northland's frequent telephone calls were harassing in nature and thus violated § 1692d and, more specifically, § 1692d(5). Finally, it seeks summary judgment as to the plaintiff's § 1692(f) claim alleging that Northland used unfair or unconscionable means to collect or attempt to collect a debt. The court will address each of these arguments in turn.

### A. Failing to Send Written Notice in Violation of 15 U.S.C. § 1692g(a)

Section 1692g(a) requires a debt collector to send a consumer written notice containing the amount of the debt, the name of the creditor, and a description of the procedures by which the consumer can dispute the debt and obtain the name and address of the original creditor. 15 U.S.C. § 1692g(a). The statute specifically provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing –
>
> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such

---

first time in its reply brief. Such arguments "are generally not considered because such a practice deprives the non-moving party of its opportunity to address the new arguments." *G.C. ex rel. Johnson v. Wyndham Hotels and Resorts, LLC*, No. 2:10-cv-0037, 2011 WL 1930557, at *4 (M.D. Tenn. May 19, 2011) (internal quotation marks and citation omitted).

> verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* The plaintiff alleges that Northland failed to send her a letter within 5 days of its initial communication with her containing the required disclosures.

The undisputed record evidence shows that Northland sent a letter to Ms. Tarrant on September 9, 2009 containing all of the required statutory disclosures. The September 9th letter stated the amount of the debt ($373.22) and the name of the creditor (DSNB/Macy's). In addition, it informed the plaintiff how she could dispute the debt and obtain the name and address of the original creditor, if different from the current creditor. Indeed, the letter virtually restated the disclosures required by subsections (3) - (5) of § 1692g(a):

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice[,] this office will provide you with the name and address of the original creditor, if different from the current creditor.

Moreover, after this letter was sent to Ms. Tarrant, it was not returned to Northland by the United States Postal Service for being undeliverable.

The aforementioned disclosures were also made in Northland's initial communication with the plaintiff. The letter in which the disclosures concerning the plaintiff's FDCPA rights

9

were made was one of two that Northland sent to Ms. Tarrant on September 9, 2009.[11] The mailing of both of those letters constituted a communication for purposes of the FDCPA, since it is undisputed that one of the two letters conveyed "information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Moreover, it is undisputed that the mailing of both of those letters represented the first communication Northland made with the plaintiff, as they were sent well before Northland successfully reached Ms. Tarrant telephonically for the first time on October 29, 2009.

The plaintiff denies that Northland sent her a letter containing the required disclosures and contends that there instead remains a genuine dispute as to this fact precluding summary judgment. Yet, at her deposition, the plaintiff testified only that she did not remember whether she received the September 9th letter containing the required FDCPA disclosures. (Docket No. 17, Ex. 2, Ex. A at 9-10, 29-30, 42.) The plaintiff has otherwise presented no evidence supporting her assertion that the letter was not sent.

In contrast, Northland has presented probative evidence showing that it sent a letter to Ms. Tarrant on September 9, 2009 containing the required disclosures. For instance, according to the affidavit of Greg Gruett, Northland's Executive Vice President of Operations, the company's account notes, which are automatically generated each time a letter for a specific account under collection is either mailed or returned, showed that the letter was sent to Ms. Tarrant on September 9, 2009. (Docket No. 15, Ex. 3 ¶¶ 1, 5, 9; Docket No. 18, Ex. 2 ¶¶ 1, 4, 6.) Mr. Gruett testified to the same effect at his deposition. (Docket No. 17, Ex. 2, Ex. B at 28-30, 37.) Mr. Gruett also stated that he is personally familiar with Northland's practices and systems,

---

[11] As previously noted, the parties have discussed neither the contents of the other September 9th letter nor its relevance to the issues presented in the instant motion.

that its account notes are created and kept by the company in the regular course of business, and that he fully understands "how to determine from [Northland's] regularly kept business records if a letter has been sent and/or returned." (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶¶ 1, 5, 7.) Moreover, Don Plantenberg, the General Manager of Bridgz Marketing ("Bridgz"), the vendor enlisted by Northland to print and deliver its letters, stated by affidavit that Bridgz printed the September 9, 2009 letter addressed to Ms. Tarrant containing the aforementioned disclosures and delivered it to the United States Postal Service on September 9, 2009. (Docket No. 18, Ex. 4 ¶¶ 1, 6.) Mr. Plantenberg added that the postal service did not report this letter as being undeliverable. (Docket No. 18, Ex. 4, ¶ 6.) "A letter mailed properly 'creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed,'" *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 430 (6th Cir. 2007) (*quoting Hagner v. United States*, 285 U.S. 427, 430 (1932)), and Ms. Tarrant's mere assertion denying that the September 9th letter was sent is not enough to rebut this presumption.

In sum, the plaintiff has failed to present any evidence from which a reasonable juror could conclude that the September 9, 2009 letter containing the required statutory disclosures was not actually sent by Northland. Accordingly, the court will grant summary judgment to the defendant on the plaintiff's § 1692g(a) claim.

### B.    Causing a Telephone to Ring With Intent to Annoy, Abuse, or Harass in Violation of 15 U.S.C. § 1692d(5)

The plaintiff alleges that Northland's repeated telephone calls to her in connection with her debt violated 15 U.S.C. § 1692d and, more specifically, § 1692d(5). Under the statute:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ....
>
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d. Ms. Tarrant alleges that the frequency of the defendant's repeated telephone calls were harassing in nature and thus violated § 1692d(5).

In determining whether Northland's "calls amount to harassment, annoyance, or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct." *Daniel v. West Asset Mgmt., Inc.*, No. 11-10034, 2011 WL 5142980, at *4 (E.D. Mich. Oct. 28, 2011) (*quoting Pugliese v. Prof. Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010). Moreover, a significant disparity between the number of telephone calls attempted by the defendant and the number of actual conversations with the plaintiff may suggest a difficulty in reaching the plaintiff, as opposed to an intent to harass. *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (E.D. Mich. Sept. 30, 2009); *see also Hicks v. Am. Recovery Solutions, LLC*, No. 1:09 cv 2650, 2011 WL 4540755, at *6 (N.D. Ohio Sept. 29, 2011). There is, however, no bright line rule as to the number of telephone calls that raises the inference of intent. *Hicks*, 2011 WL 4540755, at *6 (noting the disagreement among courts in different jurisdictions regarding the number of calls giving rise to inference of intent).

Having considered the record before it, the court concludes that no reasonable juror could find that the defendant's conduct demonstrated an intent to annoy, abuse, or harass Ms. Tarrant. Aside from citing the frequency of Northland's calls, Ms. Tarrant has failed to adduce any evidence concerning these calls that might reasonably raise an inference of an intent to harass. Indeed, it is undisputed that the defendant said nothing improper, threatening, or abusive when it spoke to Ms. Tarrant. It also did not leave any messages on Ms. Tarrant's answering machine when it was unable to reach her.

As to call frequency, while the plaintiff testified at deposition that Northland called her virtually every day, she did not recall any specific circumstances surrounding those calls and later testified that she received many calls from different debt collectors. (Docket No. 17, Ex. 2 Ex. A at 27.) Indeed, the only probative evidence in the record concerning the frequency and pattern of calls comes from the defendant, and the plaintiff has not suggested how this evidence demonstrates an intent to harass. The evidence shows that Northland made 39 calls over the approximately 4-month debt collection period. During that time, it is undisputed that Ms. Tarrant never told Northland not to call her. Moreover, of the 39 calls placed by Northland, only two resulted in actual conversations with Ms. Tarrant. This significant disparity suggests that Northland had difficulty in reaching Ms. Tarrant, rather than an intent to harass her. *See Saltzman*, 2009 WL 3190359, at *6-7 (granting summary judgment to defendant on § 1692d(5) claim when defendant placed between twenty and fifty unsuccessful telephone calls and between two and ten successful calls during approximately one month time-period); *see also Fry v. Berks Credit & Collections, Inc.*, No. 3:11 cv 281, 2011 WL 6057781, at *4 (N.D. Ohio Nov. 17, 2011) (recommending summary judgment for defendant on § 1692d(5) claim when defendant placed

13

68 unsuccessful phone calls over approximately two-month period, had only one successful contact with the debtor's spouse, and no contact with the debtor), *rep't and rec. adopted*, No.3:11 cv 281, 2011 WL 6057695, at *1 (N.D. Ohio Dec. 6, 2011); *Pugliese*, 2010 WL 2632562, at *9-10 (granting summary judgment to defendant on § 1692d(5) claim when defendant placed approximately 350 telephone calls over an eight-month period, but only had about 10 actual conversations with the plaintiffs).

Ms. Tarrant nonetheless contends that there is a question of fact as to whether Northland intended to make harassing calls because she mailed a document to the company requesting that they cease calling her. (Docket No. 17, Ex. 2 Ex. A at 13.) Yet, Ms. Tarrant's deposition testimony on this subject is inconclusive at best. After stating that she mailed a document to Northland, she testified that she had no idea when it was sent, did not make any copies of it, and was not sure precisely what it was that she sent. (*Id.* at 13-14.) Moreover, later in her deposition, when she was again asked if she ever told Northland not to call her, she stated "I don't know. I had so many calls that I don't know ... from different numbers, so I told a bunch of them not to call anymore." (*Id.* at 27.) Here again, the only probative evidence in the record on this issue was presented by the defendant and shows that Northland did not receive any correspondence from Ms. Tarrant. Specifically, Mr. Gruett stated in his affidavits that Northland's account notes, which automatically note when correspondence is received concerning a specific account, revealed that Northland received no correspondence in connection with Ms. Tarrant's account. (Docket No. 15, Ex. 3 ¶ 5; Docket No. 18, Ex. 2 ¶ 4.)

The plaintiff has not met her burden to produce evidence showing that there is a genuine dispute of material fact concerning her § 1692d(5) claim. As she has failed to adduce any

evidence from which a reasonable juror could conclude that Northland acted intentionally to harass her, summary judgment will be granted, and the § 1692d(5) claim will be dismissed.

> C. **Using Unfair or Unconscionable Means to Collect or Attempt to Collect a Debt in Violation of 15 U.S.C. § 1692f**

Section 1692f prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Without limiting its general application, this provision provides that the following conduct constitutes a violation:

> (1) the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
>
> (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
>
> (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.
>
> (5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if --
>
> > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

> > (B) there is no present intention to take possession of the property; or
>
> > (C) the property is exempt by law from such dispossession or disablement.
>
> (7) Communicating with a consumer regarding a debt by post card.
>
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*Id.* Section 1692f allows a court to "sanction improper conduct that the FDCPA fails to address specifically." *Adams v. Law Offices of Stuckert & Yates*, 926 F.Supp. 521, 528 (E.D. Pa. 1996). Yet, in applying this section, courts "have focused on conduct of a nature similar or comparable to that listed in the statute - conduct that essentially amounts to a form of abuse not falling under another section." *Watson v. NCC Recovery, Inc.*, No. 1:11 cv 101, 2011 WL 3322844, at *5 (N.D. Ohio Aug. 2, 2011) (citing *Adams*, 926 F.Supp. at 528).

While Ms. Tarrant alleges that Northland violated § 1692f, she does not specify any conduct to support her § 1692f claim other than the allegedly harassing phone calls made during the debt-collection period. However, that conduct is specifically addressed under § 1692d(5) and the court has already disposed of the plaintiff's claim asserted under that section. Accordingly, summary judgment will be granted to the defendant, and the § 1692f claim will be dismissed.

## **CONCLUSION**

Based on the foregoing, the defendant's Motion for Summary Judgment (Docket No. 15) will be **GRANTED**.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge